Good morning, Your Honors. I'm Miriam Schwartz, and I represent Christopher Paul Hawk, the appellant in this case. Mr. Hawk was sentenced in January of 2004 to 188 months, which was an upward departure from the sentencing guidelines for a homicide plea. Obviously, Your Honors, this sentencing decision occurred prior to the Supreme Court's decision in Blakely v. Washington and also, of course, prior to subsequent decisions in the United States v. Booker case and, of course, the Ninth Circuit's decision in the Ammaline case. At the time that Mr. Hawk was sentenced, the sentencing guidelines were believed to be mandatory, and Mr. Hawk was sentenced to the upward departure based on USSG 4A 1.3, based on the judge's finding by preponderance of sentencing that Mr. Hawk's criminal history category underrepresented his true criminal history. Under the Blakely decision, we take the position that that was error, and our briefing, which we did post-Blakely but pre-Booker, was based largely on the Blakely decision and the error based upon the Court's finding versus the defendant's right to jury trial on any factor which would raise his sentence from the base offense under the guidelines. We now believe that that was error, and the question is, at this point, as I see it, how does the Court treat that error? Now we know from the United States v. Booker decision that the sentencing guidelines are no longer, and were not then, mandatory, but instead are advisory. And then recently, or more recently, in United States v. Ammaline, the Ninth Circuit set forth the procedure that the appellate court is to follow in determining what to do with sentencings that are in the posture of Mr. Hawk's case. That is a case which was on direct appeal at the time the Booker case was decided. And as I understand it, that is the posture that we are in in this case. As I understand it from Ammaline, in this kind of case, what the court of appeals does is to determine from the record whether it's possible to know whether the sentencing court would have imposed a different sentence in favor of the defendant if the court had believed that the guidelines at the time of sentencing were advisory as opposed to mandatory. And the second inquiry that this Court would then make is, is the ultimate question, is the sentence reasonable given the factors in 35, in U.S.C. 3553a? And if it appears from the record that the sentence would have been different and would have favored the defendant, or would have been materially different, that is, then this Court would find plain error in the sentence because of the Blakely error, and this Court would then remand the case to the district court for a resentencing. The defendant in that situation, as I understand it, is given the opportunity to opt out and choose not to pursue a resentencing. In this particular case, the Ammaline – since the Ammaline decision came down, and not having had this case set for argument at that time, and frankly not knowing how this Court was going to treat our case Do you want this to go back? Excuse me, Your Honor? Do you want this to be remanded? As a lawyer, Your Honor, it is my judgment that Mr. Hawk would not benefit from the case going back. Mr. Hawk has already been in front of Judge Bryan on two occasions for sentencing, and Judge Bryan made it very clear on the second occasion that he felt the same way the second time as he did the first time, despite the benefits of rebriefing, rearguments, and reappearances by all the parties and witnesses. So it is my judgment, as a lawyer reviewing the case, that Mr. Hawk would not benefit – and I would not request a remand under Booker for the Court to make findings and decide whether he would decide the case the same way the third time. Can we take that as meaning that it's all right also with the accused? Well, you're very careful here in saying, as a lawyer. And I have no quarrel with that, because we know the findings that Judge Bryan has made and the reasons for his having imposed the sentence, and we know that it's 188 months, not 187, and it couldn't have been 189 under what he thought the law was, and we all thought the law was when he imposed the 188. And it just strikes me that on this record it would be very imprudent. Imprudent? To seek a re-sentence. And that's exactly what I'm saying, Your Honor. Now, however, that's not for us necessarily as lawyers to make, is it? Your Honor. If he were to tell us unequivocally, I want to go back, what would we do with that? Well, this is exactly what I was about to address. Oh, okay. Please do. I indicated as a lawyer I have a certain view of the case. I have not actually conferred with my client on this particular issue and given the point in time. And I believe that before I tell the Court that I am asking the Court not to send it back, I need to do that. And that is what I was about to say. If I could have a certain period of time to confer and determine whether Mr. Hawk wants to opt out of his opportunity for re-sentencing, then I could advise the Court. Couldn't you do the same thing if we decided to remand this by just notifying the Court? I believe I could. In the district court, not us. Frankly, that's exactly what I had thought was going to happen, is that I would get the remand order and would then contact the district court with our decision to opt out or to take advantage. And if we follow that procedure, then we wouldn't have to do this procedure. We'd just go ahead and do our job. I think it's possible to, it may be possible to read Ameling to make that more appropriate. But frankly, that's the way I had interpreted it, and that's what I thought was going to happen. But at this point, in any event, I will be contacting Mr. Hawk directly, try to determine what his position is, and then advise whichever court the case, wherever the case is at that point, I would advise that court. I have nothing further. I think our position is pretty clear. Thank you. Thank you. Good morning, Your Honor. Bruce Miyake on behalf of the government. May it please the court, counsel. This is the first that I've heard that Mr. Hawk may opt out. But I would submit to this court that on this record, that the issue is, is he even entitled to a limited remand?    I think what the court has said is that, in this case, this is a fairly unblocked decision by this court. A defendant is only entitled if the heir, i.e., being sentenced under, with the misimpression that the guidelines were mandatory, when in fact they're advisory, is entitled to that only if he would have received a materially different sentence. And given this record, we have two hearings in which the judge's comments are quite clear as to how he views this, that he would give the same sentence just as this court has indicated. So it would be the government's position that even if the defendant wanted to go back, that this court should not send this back for a limited remand and affirm the district court. And that's really all I have to say on that. Kennedy. And I think that's what the danger to him is. He proceeds at his peril. Well, are you telling us that because you don't think the sentence would be any different, that we could remand it without any risk to him, that it would be bigger?     I don't think so. I don't think so. I'm not saying that. Well. I'm not saying that. You, in effect, said we have no reason to believe it's any different. We have no reason to believe it's going to be any bigger. And you acknowledge that as half of the assertion that we have no reason to believe it would be any different, then maybe he could go back there without risk. Well, I think that perhaps maybe I should specify that it would not be any better for him. That probably is a more accurate. But you're not his guardian. I understand. Now, what do you want? What we're asking is, what we're asking for this court is simply to affirm the sentence in 188 months and end it right here. Because you think it probably wouldn't be any different or in any event it's a just and fair sentence from your perspective. Both. I don't think that it would be any different. It is a just and fair sentence. If this goes back to the district court, are you bound by what you just said? Am I bound by what I just said? Yes. You know, I've struggled with that. And let me explain why. When this came through, as I indicated at the first sentencing hearing, I thought that the guideline sentence for murder in the second degree, especially given these facts, was too low. And we looked for a way for an upward departure, and we tried to do it in a very reasoned, measured way, which we thought was justified under the existing sentencing guidelines. Had we not been handcuffed, if you will, by the guidelines, this would have been a situation where I most likely would have asked for something higher than 188 months. The difficulty here is we have a pattern where we have consistently asked for 188 months. I think that when you look at the record, Judge Bryan could have gone higher. He could have departed two criminal history categories and gave him more. The judge seemed to feel that the 188 months was appropriate, and it would be something that I would think about. And I take it all of this is part of what Ms. Schwartz can put in the mix when she talks to her client, and she's doing quite a job of representing him. Yes. In resolving the answer to the question I asked you, you might want to do some research on the stopper. Well, I understand. I understand that there is some case law that suggests that that would we are somewhat bound by the previous sentence. My only point to that is... By what you said here today. Oh, I understand. Well, he's... Okay. Anyway. So let me just qualify that. I would consider asking for... You're leaving yourself a little wiggle room. Thank you, Your Honor. Thank you. Do you wish to add anything? I agree with some of what Mr. Miyata said, and I disagree with some of it. I did want to clarify, just to make the point that we agree with what we said in the district court both times also. We feel that the judge should not have departed based on criminal history, that he should have adhered to the guidelines which were at the time mandatory. And we never we contested that vigorously twice and would adhere to it again if we were to go back. However, we are not requesting a remand. I believe that the record, not what I think, but I think that the record shows that a remand would not result in a materially better result for Mr. Hawk, and that's why we are not requesting a remand at this time. I understand. Thank you. I'm not clear, then, what your position is with us. Should we affirm or reverse? And why? Well, you should not. Not on a mandatory issue. Right. No, I don't think you should reverse. And I don't think it should go back to Judge Bryan for a full remand. But I think that I need to confer with my client and put on the record his position. I don't think that I can officially ask this Court to not send it back without clearing that with Mr. Hawk. That's my position. Very good. Thank you very much. Appreciate it. Okay. The matter is more or less submitted. And
judges: Schroeder, Alarcon, Leavy